DRUMMOND'S EXECUTOR *vs.* DRUMMOND and others.

1. Testator gave all his property, real and personal, to his executors, with directions to divide all the income equally between his wife and daughter, share and share alike ; at the death of his wife, the whole fund to go to his daughter, when she should arrive at full age; if the daughter.should die without leaving lawful issue, the fund to go to his nephew, P. M. P. M. died in testator's lifetime. The widow is dead. *Held,* that the daughter was entitled to the entire fund, absolutely. *Held, also,* that the children of P. M., even if the daughter should die without leaving lawful issue living at her death, would not be entitled to the fund, either as next of kin to P. M., for the gift to him lapsed, or as next of kin to the testator, P. M.'s death in his lifetime leaving the bequest to the daughter unaffected by the limitation.

2. Where there is an absolute gift, subject to be defeated by a contingent executory gift over, which could never, by possibility, take effect, the primary gift is the same as if there was no provision for its defeasance.

3. Where a devise over fails, and the terms of the first devise are sufficient to carry the whole interest, and there is nothing in the circumstances indicating that such could not have been the intention of the testator, the estate remains in the former taker.

4. If an executory devise be void, for remoteness, or any other cause, the prior devise will be absolute.

On final hearing, on bill and.answers.

*Mr. A. G. Richey,* for the executor.

*Mr. G. D. W. Vroom,* for Jane Drummond.

*Mr. E. E. Green,* for the children of Philip McGran.

THE CHANCELLOR.

The will of John Drummond, late of Trenton, who died in the year 1862, contains the following provision : " All of my real and personal estate, whatsoever and wheresoever found, I do order and direct my executors to rent all of my

houses, lands and tenements, to the best advantage they reasonably can, and collect the rents, and keep all my money, that is, all of my bonds and mortgages, and notes of hand, at interest, and collect the interest as it becomes due, and divide the money equally, that is to say, all of the rents and interest money equally between my beloved wife, Sarah Drummond, and my adopted daughter, Jane Drummond, a little girl now living with me, to be equally divided between them, share and share alike, as long as my said wife shall live, the one-half of the said income to be paid to my said wife annually, the other half to go to the use of my said adopted daughter, as follows: to pay for schooling, clothing, board, washing and lodging, and needful expenses; the residue of her share to be put to interest for her, and to be paid to her when she arrives at full age; and, at the death of my said wife, I give and bequeath all of my property, both real and personal, to my said adopted daughter, Jane Drummond, now living with me, when she arrives at full age. The above bequest that I give to my said wife, in lieu of her right of dower at common law. If my said adopted daughter, Jane, should die without leaving lawful issue, I do, in that case, give all of my said property, whatsoever and wheresoever found, to my nephew, Philip Magran, now living in the city of Augusta, in the State of Georgia. All of those persons indebted to me, by bond and mortgage, my desire is, they be not pushed or sued for the said debts, as long as the money is considered safe, and they pay up the interest punctually; I mean during the minority of my said adopted daughter, Jane Drummond; but in case they neglect to pay up the interest punctually, it would be nothing but reasonable that they be made to pay the principal."

The will is dated on the 22d of August, 1854. The testator's widow is dead. Jane Drummond has attained her majority. The acting executor now holds the personal estate, which, by the above provision of the will, is given to Jane Drummond, on her attaining to her majority, in his hands. Philip McGran, the person called in the will Philip Magran, was dead when

the will was made. His three children claim that, under the foregoing provision of the will, Jane Drummond is entitled to the interest or income only of that property, during her life, and that if she shall leave no issue living at her death, they will be entitled to the fund, either as the next of kin of Philip McGran, and in substitution for him, or as the next of kin of the testator, who, they insist, will, in that event, have died intestate of the fund, so far as the disposition of it, after her death, is concerned. The acting executor asks the direction of this court as to the disposition he should make of the money.

On the hearing, the question was raised and discussed, whether the limitation over was dependent on Jane Drummond's dying, without leaving lawful issue, before she should have attained to her majority, or whether it will take place on her death without issue, whenever that event shall happen. I see no ground on which the former construction can be based. The testator, after giving to her his real and personal property, when she should have attained to the age of twenty-one years, proceeds to declare that the provision made for his wife is intended to be in lieu of her dower. He then, by an independent clause, declares the limitation under consideration. It was suggested, on the hearing, that the fact that he qualified the direction to his executors, in regard to the investments on bond and mortgage, which he might leave, by limiting it to the minority of Jane Drummond, is evidence in support of the construction that the limitation over was intended to be dependent on her death, without leaving lawful issue, before she should have attained to her majority. But no argument, as to construction, can be drawn from that provision. The qualification which it contains has no significance on that head. It is merely evidence that the testator understood and intended that the control of his executors over the investments should cease when Jane should have come of age. That, as between Jane Drummond and Philip McGran, if he had survived the testator, the former would have been entitled to a defeasible interest only in the property involved in this controversy,

and that the latter would, in the contingency of her dying without leaving lawful issue, have been entitled, at her death, to the property, cannot be doubted. *Forth* v. *Chapman*, 1 *P. W.* 663; *Hawkins on Wills* 213; *Nix. Dig.* 1032, § 27; *Condict* v. *King*, 2 *Beas.* 375. His children can have no claim under him, for the gift over to him lapsed, and there is no evidence of an intention to substitute. Their claim, as next of kin to the testator, must depend on the question whether their father's death, in the lifetime of the testator, did or did not leave the bequest to Jane Drummond unaffected by the limitation over. I am of opinion that it did. The testator gave his property to Jane when she should have attained to her majority, giving it over to McGran in the event of her dying without leaving lawful issue. The gift to Jane was absolute, subject to be defeated by the contingent executory gift over. She was the primary object of his bounty. The provision made in the contingency of her dying without leaving lawful issue, was made expressly for another object of his bounty whom he desired and intended to benefit in that event. That object had ceased to exist, and the provision, therefore, was at an end, and the primary gift was left wholly unaffected by it. The testator did not provide that Jane should have a life estate, merely, and that, after her death, the property should go to her children, if she should leave any, but he gives the property to her without qualification in the gift. The principle of the rule that, where there is an estate in fee liable to be defeated on a condition subsequent, and that condition originally was, or by matter subsequent, has become impossible to be performed, the defeasible estate is made absolute, (*Co. Litt.* 206 *a,*) applies to this case, for the estate was made liable to be defeated by a gift over, which could never, by possibility, take effect, and the primary gift, therefore, is the same as if there were no provision for its defeasance. It was so held in *Den ex dem Van Middlesworth* v. *Schenck*, 3 *Halst. R.* 29. There the devise was to the testator's son and daughters in fee, with provision that if any of them should die without issue, at his or her death, the estate of such decedent

should go to the survivors. The daughters died in the son's lifetime. He died without leaving issue. It was held, that the death of the daughters made it impossible that the estate should be defeated by going over to the survivors, when there were none, and that, from that time, it became an absolute fee simple in the son. So, too, in *Jackson* v. *Noble*, 2 *Keen* 590, where a testator gave real and personal estate to his daughter and two others in trust, to permit her to receive the rents and interest for life, and, after her decease, to convey to her heirs, executors, &c., with provision that, in case she should marry and have no children, then the property was to belong to his son, or, in case of the son's decease before her death, then to the son's children, it was held by Lord Langdale, M. R., that the daughter took an absolute equitable estate, with an executory gift over to the son and his children; and the son having died in the lifetime of the daughter, leaving no child, it was further held that the contingent executory gift could not take effect, and that the estate already vested in the daughter could not be devested. See, also, 1 *Jarman on Wills* 783. "The general rule," says Redfield, "that, where the devise over fails, the estate remains in the former taker, seems to be recognized as a general principle, where the terms of the first devise are sufficient to carry the whole interest, and there is nothing in the circumstances indicating that such could not have been the intention of the testator." 2 *Redfield on Wills* 647. If an executory devise be void, on account of remoteness, or for any other cause, the prior devise will be absolute. *Lewis on Perpetuities* 657; 1 *Jarman on Wills* 783; *Church in Brattle Square* v. *Grant*, 3 *Gray* 142. Nor is the ruling of the master of the rolls, in the case of *Joslin* v. *Hammond*, 3 *M. & K.* 110, in opposition to that of Lord Langdale, in Jackson *v.* Noble. In Joslin *v.* Hammond, the testator gave his entire property to his wife, on condition that she should pay an annuity to his mother during the life of the latter, and directed that, after the death of his wife, his property should be equally divided between those of his children who should survive her. All the testator's children

died in the widow's lifetime. She married again, and died, leaving her husband surviving her. It was held that upon her death, in the events which had happened, the testator's property was undisposed of, and that the next of kin, and not the second husband, in right of his wife, were entitled to it. The decision was distinctly put on the ground, that it appeared, upon the whole context of the will, that it was the intention of the testator that his wife should, in no event, have other than a life estate.

Jane Drummond is entitled to the possession of the fund in question in this suit, without giving security. She would be so entitled to it, if McGran's children had the interest in the fund which they claim. *Rowe* v. *White*, 1 *C. E. Green* 411, 417.